IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                              |     |                    |
|------------------------------|-----|--------------------|
| UNITED STATES OF AMERICA,    | )   |                    |
|                              | )   |                    |
|     Plaintiff,               | )   |                    |
|                              | )   |                    |
| vs.                          | )   | No. 11-20118MaV    |
|                              | )   |                    |
| JOHN GIVINS,                 | )   |                    |
|                              | )   |                    |
|     Defendant.               | )   |                    |

---

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
STATEMENTS

---

On May 5, 2011, the grand jury returned a 33-count indictment charging 17 defendants with drug and drug-related crimes. The defendant, John Givins ("Givins"), was charged in three of the counts: Count 2 - conspiracy to possess with intent to distribute no less than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 846; Count 22 - using a communication facility for the distribution of a controlled substance in violation of 21 U.S.C. § 843(b); and Count 23 - possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

Before the court is Givins's motion to suppress filed on February 21, 2012. Givins seeks to exclude any and all statements he made on or after May 18, 2011, on the grounds that he was not advised of his *Miranda* rights. The motion was referred to the United States Magistrate Judge for a report and recommendation.

A hearing was held on March 28, 2012.  At the hearing, the government called two witnesses: DEA Special Agent Charles Andrews ("SA Andrews") and Homeland Security Investigations Agent Billy Riggins ("HSI Agent Riggins").  Givins testified on his own behalf and also called his wife, Erica Givins, as a witness.  One exhibit was introduced into evidence:  SA Andrews's DEA 13a card.  For the reasons that follow, it is recommended that Givins's motion to suppress be denied.

<u>PROPOSED FINDINGS OF FACT</u>

On May 18, 2011, at approximately 8:00 a.m., eight federal agents, including SA Andrews and HSI Agent Riggins, arrived at Givins's home in Southaven, Mississippi, to serve a federal arrest warrant on Givens for drug and conspiracy charges.  The agents were dressed in gear marked with the name of their respective agencies.  SA Andrews testified that upon arrival, he knocked on the door of the Givins residence, and Mrs. Givins opened the door with one of her children alongside her.  SA Andrews informed Mrs. Givins that they were looking for her husband.  Mrs. Givins replied that Givins was at the residence, stepped back from the door, and called her husband's name.[1]

In response, Givins appeared in the foyer.  SA Andrews testified that Givins was nude, and HSI Agent Riggins testified

---

[1] To this point, SA Andrews's testimony is consistent with the testimony given by Mrs. Givins.

that Givins was not completely clothed and there was nudity involved. SA Andrews then introduced himself to Givins, informed him that the agents were there to arrest him, and asked whether he could escort Givins to the bedroom so that Givins could get dressed. Givins agreed. Both SA Andrews and HSI Agent Riggins testified that they escorted Givins to the bedroom.

SA Andrews testified that once they were in the bedroom with the door closed, he asked Givins to put on some clothes, that Givins first put on a blue robe, and that SA Andrews told him he needed to put clothes on. SA Andrews further testified that while Givins was doing so, he removed a yellow DEA Form 13a card from his wallet and read Givins his *Miranda* rights from the Form 13a.[2] According to SA Andrews, Givins then stated that he would answer any questions and wanted to talk with the agents. HSI Agent Riggins emphasized during his testimony that he witnessed both the reading of DEA Form 13a by SA Andrews and heard the statements made by Givins. According to both agents' testimony, this all occurred within a short period of time, lasting approximately five minutes.

Mrs. Givins testified, however, that SA Andrews did not go to the bedroom with Givins but a couple of agents did. During her testimony, she stated that SA Andrews remained with her in the kitchen and questioned her while Givins was in the bedroom. In

---

[2] A DEA Form 13a is the agency's standard *Miranda* waiver form. *United States v. Baldwin*, No. 4:10-CR-032-07-HLM-WEJ, 2011 U.S. Dist. LEXIS 73010 (N.D. Ga. June 17, 2011).

addition, she testified that when Givins emerged from the bedroom initially, he put a robe on in the foyer but the robe gaped open in the front and was not belted.

In his testimony, Givins did not refute that SA Andrews and HSI Agent Riggins escorted him to the bedroom. Rather, he testified that he could not recall the identity of the two agents who escorted him to his bedroom. Givins testified under oath that neither of the agents read him *Miranda* warning while in the bedroom. It is undisputed that no written acknowledgment of *Miranda* warnings was executed by Givins.

According to the agents, after Givins was clothed, they all proceeded to the kitchen, where Mrs. Givins was waiting. SA Andrews testified that he sat down with Givins and his wife at the kitchen table. SA Andrews informed them that Givins was being arrested because of his involvement in drug activity. Mrs. Givins became upset and asked her husband "what is going on?" Givins responded that he was innocent. Believing that Givins was embarrassed to speak with the agents in front of his wife about his alleged involvement in drug activities, SA Andrews asked Mrs. Givins to step out of the kitchen so that he could talk to Givins privately. Once Mrs. Givins had stepped out of the room, SA Andrews told Givins that it was important for him to be honest.

It is undisputed that Givins signed a consent-to-search form, authorizing the agents to search both his residence and his

apartment in Memphis.  After obtaining Givins's consent, the agents searched Givins's residence and seized a cell phone as evidence. Givins later took the agents to his Memphis apartment, which was approximately fifteen to thirty minutes from the Givins residence. The agents did not find any money or drugs at the apartment but they did find some documents, which they copied.

Following the search, the agents took Givins to the DEA office to interview him.  SA Andrews asked Givins about his involvement with Earl Shaw.  Givins admitted that he was present with Shaw during drug and financial transactions.  SA Andrews ended the interview because he was concerned whether Givins was being completely truthful.  SA Andrews advised Givins to get an attorney.

The only critical factual issue is whether Givins was advised of his *Miranda* warnings while in the bedroom of his residence.  If he was not, then any statements made would be subject to suppression.  Givins denies that he was ever given any *Miranda* warnings at any time, including specifically while he was getting dressed in the bedroom.

After considering the testimony of all the witnesses at the hearing and observing the demeanor of the witnesses, the court finds that Givins was not a credible witness.  During his testimony, Givins admitted that two agents escorted him into his bedroom while he got dressed but stated that he could not recall whether SA Andrews was one of the agents present in the bedroom

even after being questioned by SA Andrews in the kitchen, going to the apartment with SA Andrews, being questioned by SA Andrews at the DEA offices, and seeing SA Andrews in court. In addition, Givins stated that he could not recall what discussion occurred in the bedroom, even though he was certain that he was not read his *Miranda* warnings in the bedroom. The court finds that Givins testimony was self-serving and unreliable. Givins testified strictly to his own benefit. The court questions how Givins is unable to remember what discussions took place in his bedroom but can still remember that no one advised him of his *Miranda* rights.

The court finds Mrs. Givins's testimony was credible in part and not credible in part. During her testimony, Mrs. Givins stated that she was traumatized and fearful when the agents arrived at her home, which is to be expected considering Mrs. Givins has never been arrested. She testified that the sight of armed federal agents appearing at her doorstep while she was preparing to send her children to school was very alarming. Although Mrs. Givins was specific about particular details of that morning, given her nervous and fearful state, she cannot be expected to remember everything accurately. In addition, her testimony was not corroborated in full by the testimony of Givins. Moreover, as the wife of the defendant, Mrs. Givins's testimony is biased because of their marital relationship and her interest in helping her husband. Further, Mrs. Givins had never met SA Andrews before the day of

arrest and had not seen him again until the hearing in court. Thus, her testimony that SA Andrews never went in the bedroom with her husband is suspect. Plus, Mrs. Givins was not present in the bedroom and cannot possibly know if officers read Givins his rights in the bedroom.

This court finds both SA Andrews and HSI Agent Riggins to be credible witnesses. SA Andrews's testimony is plausible and was corroborated in its entirety by HSI Agent Riggins's testimony. There was no doubt, by either agent, that both agents escorted Givins to the bedroom and that SA Andrews read Givins his *Miranda* warnings from the DEA Form 13a. As SA Andrews was the primary investigator in the Givins case, it is logical that SA Andrews would have escorted Givins to the bedroom and read him his *Miranda* rights. SA Andrews has been with the DEA for 19 years. He has conducted over 100 investigations and has interviewed the defendants in nearly every investigation. He testified that it is his normal practice to read an arrestee his *Miranda* rights from the Form 13a, which he keeps in his wallet at all times. In addition, the discrepancy in testimony regarding the robe or lack thereof at certain times is minor and does not impeach his memory or credibility.

The defendant argues that the DEA 6 report completed by SA Andrews does not include any facts stating that SA Andrews read Givins his *Miranda* warnings and that Givins waived them. SA

Andrews admitted that waiver of Miranda rights by a defendant was an important detail but explained that a DEA 6 is meant to be a general report of the investigation and that it is not necessary for specific details of the event to be included in a DEA 6 report. The fact that SA Andrews did not include specific details surrounding the *Miranda* warnings does not diminish his credibility because HSI Agent Riggins corroborated SA Andrews's testimony. Therefore, the court finds the testimony of SA Andrews and HSI Agent Riggins to be truthful and credible and accepts their version of the May, 18, 2011 events as fact, and finds as fact that Givins was read his *Miranda* rights.

PROPOSED CONCLUSIONS OF LAW

Before conducting a custodial interrogation, law enforcement officers must advise a defendant of his right to remain silent, that anything he says may be used against him, and that he has a right to have an attorney, either retained or appointed, present during interrogation. *Miranda v. State of Arizona*, 384 U.S. 436, 444 (1966). If the defendant is not informed of these rights, any pretrial statements obtained in a custodial interrogation are presumed coerced and inadmissible at trial in the government's cases in chief. *Oregon v. Elstad*, 470 U.S. 298, 317 (1985). The "right" to *Miranda* warnings is not constitutionally mandated. *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). Rather, the warnings are intended as a prophylactic mechanism to safeguard against the

inherently coercive effects of in-custody interrogation, which threatens the right against self-incrimination. *Id.*

*Miranda* warnings are required only when a suspect is in custody and subject to interrogation. *Miranda* defined custody as "the [deprivation] of . . . freedom of action in any significant way." *Miranda,* 384 U.S. at 444. Interrogation "refers not only to express questioning" but also includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Imis*, 446 U.S. 291, 300-301 (1980).

In this case, the agents knocked on the front door of the Givins residence with the intention of taking Givins into custody. When Givins came to the door, the agents informed him that they were there to arrest him. At this point, *Miranda* warnings were required because Givins's freedom of action was significantly limited. In addition, Givins was subject to interrogation. Once he was taken into custody by the agents and entered the bedroom to dress, the agents should have known that any responses made by Givins in regard to any statements or questions proffered by the agents were reasonably likely to elicit an incriminating response.

The government bears the burden of demonstrating that a defendant knowingly and intelligently waived his privilege against self-incrimination and Sixth Amendment rights, which are protected

by *Miranda*.    *Tague v. Louisiana*, 444 U.S. 469, 470–71 (1980)(quoting *Miranda v. Arizona*, 384 U.S. at 475)).    The requisite showing is a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 167-169 (1986).

Here, both SA Andrews and HSI Agent Riggins testified that they were the two agents who escorted Givins to the bedroom.    Both agents also testified, credibly, that SA Andrews read Givins his *Miranda* rights from the DEA Form 13a while they were in the bedroom.    The court has found as fact that Givins was advised of his *Miranda* rights.

Givins's actions after the agents read his rights — admitting that he was present with Shaw during drug transactions, consenting to a search of his home and apartment, and signing a consent-to-search form – are consistent with the agents' testimony that Givens knowingly waived his rights and was willing to assist the agents in their investigation.    The government has successfully shown, with specificity, that SA Andrews advised Givins of his right and that Givins expressly agreed to speak with the agents despite these rights.    There was no evidence that Givins asserted his *Miranda* rights at any point during the questioning that ensued.

Nor was there any proof that Givins was coerced or gave a statement under duress.    While Mrs. Givins testified that she was fearful at the sight of armed federal agents in her residence, there was no testimony that SA Andrews's actions were combative or

that any of the agents were physically threatening towards her or Givens in any way. The government's evidence is sufficient to show by a preponderance of the evidence that Givins knowingly and intelligently waived his rights after being properly advised of his *Miranda* rights. The testimony adduced at the hearing indicated that Givins made statements to the federal agents after being fully advised of his *Miranda* rights. Thus, there are no statements to be suppressed on this ground.

<u>RECOMMENDATION</u>

For the reasons expressed above, this court recommends that Givins's motion to suppress be denied.

Respectfully submitted this 1st day of May, 2012.


s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE